IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOANNE FIERS, Special Administrator
for the Estate of Richard Bendel,

           Plaintiff,                          OPINION & ORDER

   and                                        15-cv-88-jdp

WISCONSIN DEPARTMENT OF HEALTH
SERVICES, c/o HMS Wisconsin Casualty Recovery,

           Involuntary Plaintiff,

   v.

LA CROSSE COUNTY, d/b/a Lakeview Health
Center; MISSISSIPPI VALLEY HEALTH SERVICES
COMMISSION, d/b/a Lakeview Health Center;
WANDA PLACHECKI; WEST BEND MUTUAL
INSURANCE COMPANY; JEREMY HOLM;
LILLI LEIN; and JANET LOY-MINOR,

           Defendants.

---

      Richard Bendel resided at Lakeview Health Center, a skilled nursing facility operated by defendants La Crosse County and the Mississippi Valley Health Services Commission. Mr. Bendel suffered from severe dementia and he was a known elopement risk. In February, 2014, he wandered off and fell, suffering fatal injuries. Plaintiff Joanne Fiers is Mr. Bendel's sister and the administrator of his estate. She asserts state-law claims for negligence and punitive damages. The case is in federal court because she also brings a claim under 42 U.S.C. § 1983, alleging that defendants violated Mr. Bendel's rights under the Federal Nursing Home Reform Act.

      Defendants move to dismiss Fiers's claims for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 21. Defendants contend that: (1) as a threshold matter, the court should dismiss Count I because the Federal

Nursing Home Reform Act, 42 U.S.C. § 1396r (FNHRA), does not provide a basis for a 42 U.S.C. § 1983 claim; (2) alternatively, the court should dismiss Count I because Fiers has failed to sufficiently plead that an underlying "custom" or "policy" caused the alleged federal rights violations; (3) the court should dismiss Count I because Fiers's allegations generally fail to state a claim upon which relief may be granted; and (4) the court should dismiss Counts II, III, and IV because Fiers failed to comply with Wis. Stat. § 893.80. *Id.* The first issue is decisive. The court will grant defendants' motion to dismiss Count I and it will decline to exercise supplemental jurisdiction over Counts II-IV.

Defendants also move the court for an order striking materials Fiers submitted in opposition to defendants' motion to dismiss because they fall outside of the pleadings. Dkt. 32. In light of the court's disposition of defendants' motion to dismiss, the court will deny defendants' motion to strike as moot.

ALLEGATIONS OF FACT

When evaluating the motions before the court, the "court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Accordingly, the facts that follow are drawn from the Amended Complaint.

Defendants La Crosse County and the Mississippi Valley Health Services Commission own and operate Lakeview Health Center as a "skilled," Medicaid-certified nursing facility which receives federal funding under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v.

Defendants are all affiliated with Lakeview Health Center and include La Crosse County d/b/a Lakeview Health Center, the Mississippi Valley Health Services Commission d/b/a

Lakeview Health Center, Wanda Plachecki (Lakeview Health Center Administrator), Janet Loy-Minor (Lakeview Health Center Director of Nursing), Lilli Lein (Lakeview Health Center certified nursing assistant), Jeremy Holm (Lakeview Health Center certified nursing assistant), and West Bend Mutual Insurance Company, which provides liability insurance coverage to La Crosse County and the Mississippi Valley Health Services Commission with respect to Lakeview Health Center.

Staff at Lakeview Health Center knew that Mr. Bendel: (1) suffered from vascular dementia; (2) was an "elopement risk"; and, as a result, (3) required increased supervision. On February 16, 2014, defendant Jeremy Holm, a certified nursing assistant, observed Mr. Bendel walking toward the nursing home's north exit but failed to ensure that Mr. Bendel did not exit the facility. Defendant Holm and defendant Lilli Lein, also a certified nursing assistant, ignored the exit door's audible alarm as Mr. Bendel left. Mr. Bendel walked across a roadway, tripped on a curb, fell, and sustained serious injuries. He died approximately four days later. Several days after Mr. Bendel's death, the Wisconsin Department of Health and Human Services investigated the "elopement incident" and cited Lakeview Health Center with an "Immediate Jeopardy" violation.

Fiers alleges deprivation of civil rights, pursuant to 42 U.S.C. § 1983, against defendants La Crosse County and the Mississippi Valley Health Services Commission; common law negligence against defendants Lein and Holm (asserted vicariously against defendants La Crosse County and the Mississippi Valley Health Services Commission); professional negligence against defendants La Crosse County, the Mississippi Valley Health Services Commission, Plachecki, and Loy-Minor; and a claim for punitive damages.

ANALYSIS

The court has original jurisdiction over Fiers's 42 U.S.C. § 1983 claim, pursuant to 28 U.S.C. § 1331, because it raises a federal question. The court may exercise supplemental jurisdiction over Fiers's remaining state law claims because the claims are so related to Fiers's section 1983 claim that they form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

Because defendants answered before moving to dismiss pursuant to Rule 12(b)(6), the court necessarily construes defendants' motion as one for judgment on the pleadings, pursuant to Rule 12(c). Fed. R. Civ. P. 12(b), (c); *Forseth v. Vill. of Sussex*, 199 F.3d 363, 367 (7th Cir. 2000). Judgment on the pleadings is appropriate only when "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Forseth*, 199 F.3d at 368 (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)). The court reviews motions for judgment on the pleadings pursuant to Rule 12(c) under the same standard as motions to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), although under Rule 12(c) the court considers *all* the pleadings and not just the complaint. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The court views the facts pleaded in the complaint in the light most favorable to the non-moving party—in this case, Fiers—and will grant the motion only if it appears that Fiers is unable state a claim upon which relief may be granted. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). In the event Fiers can prove no set of facts that would entitled her to relief—namely, in the event Fiers is unable to maintain a claim for violations of the FNHRA via section 1983—judgment on the pleadings on Count I is appropriate. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). "The essence of the motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of her facts are accurate,

she has no legal claim." *Brown v. Pick 'N Save Food Stores*, 138 F. Supp. 2d 1133, 1136-37 (E.D. Wis. 2001) (citing *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir. 1999)).

The threshold question is whether 42 U.S.C. § 1983 provides a cause of action for violations of the FNHRA. Because the court will ultimately conclude that Fiers does not have a cause of action under section 1983, the court will dismiss Count I. Because Fiers's only federal claim is dismissed, the court will decline to exercise supplemental jurisdiction over Counts II-IV.

**A.     The FNHRA does not confer federal rights enforceable under section 1983**

Fiers may allege a claim for violations of the FNHRA via section 1983 if and only if the FNHRA creates and confers federal rights. Section 1983 provides a cause of action to enforce individual rights conferred by federal statute as well as the Constitution.[1] *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005) (citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). "[T]o seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original) (citing *Golden State Transit Corp. v. L.A.,* 493 U.S. 103, 106 (1989)).

Under *Blessing*, courts consider three factors when determining whether a federal statute creates and confers a federal right: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) the asserted right must not be "so vague and amorphous that

---

[1] 42 U.S.C. § 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

5

its enforcement would strain judicial competence"; and (3) "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972-73 (7th Cir. 2012) (quoting *Blessing*, 520 U.S. at 340-41).

In *Gonzaga University v. Doe*, the Supreme Court clarified the *Blessing* factors, holding that federal statutes must *unambiguously* create and confer federal rights to support a cause of action under section 1983. 536 U.S. 273 (2002). Post-*Gonzaga*, the *Blessing* factors "are meant to set the bar high" as "nothing 'short of an unambiguously conferred right [will] support a cause of action brought under § 1983.'" *Planned Parenthood*, 699 F.3d at 973 (quoting *Gonzaga*, 536 U.S. at 283). *Gonzaga* specifically addressed Spending Clause legislation,[2] clarifying that "unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." *Gonzaga*, 536 U.S. at 280 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17, 28, n. 21 (1981)). *Gonzaga* also clarified that even federal statutes intended to benefit a particular class do not necessarily confer federal rights. *Gonzaga*, 536 U.S. at 283. Falling within a federal statute's "general zone of interest" is insufficient; section 1983 provides a cause of action for deprivations of *rights*, not broader benefits or interests. *Id*.

The issue now before the court is whether the FNHRA confers federal rights under the *Blessing-Gonzaga* standard articulated above. The parties do not dispute that the FNHRA

---

[2] Congress passed the FNHRA, and the larger Medicaid Act of which the FNHRA is a part, pursuant to the Spending Clause. *Schwerdtfeger v. Alden Long Grove Rehab. and Health Care Ctr., Inc.*, No. 13-cv-8316, 2014 WL 1884471, at *3, n. 1 (N.D. Ill. May 12, 2014) (citing *Abraham Lincoln Mem. Hosp. v. Sebelius*, 698 F.3d 536, 543 (7th Cir. 2012); *Ind. Ass'n of Homes for the Aging, Inc. v. Ind. Office of Medicaid Policy & Planning*, 60 F.3d 262, 264-65 (7th Cir. 1995)).

provisions at issue in the present case are mandatory, thus satisfying the third *Blessing* factor. Accordingly, the court's analysis turns on the first two *Blessing* factors.

First, the court considers whether Congress intended the FNHRA to confer a right to Mr. Bendel. Congress passed the FNHRA "to provide for the oversight and inspection of nursing homes that participate in Medicare and Medicaid programs." *Grammer v. John J. Kane Reg'l Center-Glen Hazel*, 570 F.3d 520, 523 (3d Cir. 2009). Although it appears that Congress did intend the FNHRA to benefit nursing home residents, it is not enough that Mr. Bendel falls within the statute's general "zone of benefit." Post-*Gonzaga*, the statutory language must unambiguously indicate that Congress intended the statute to confer federal rights.

The portions of the FNHRA at issue in this case do not contain unambiguous, rights-creating language. Congress drafted the FNHRA in terms of what nursing facilities must do to receive government funding. Generally speaking, "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 377 (7th Cir. 2010) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001)). The ten FNHRA provisions that Fiers identifies in the Amended Complaint[3] articulate requirements for nursing facilities, not resident rights. While *all* of the identified subsections generally focus on facility requirements, subsection (b)(1)(A) comes closest to expressing a resident right. Subsection (b)(1)(A) provides that "[a] nursing facility must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident." 42 U.S.C. § 1396r(b)(1)(A). However, even this subsection focuses on

---

[3] 42 U.S.C. §§ 1396r(b)(1)(A), (b)(1)(B), (b)(2)(A), (b)(3)(A)-(E), (b)(4)(A), (b)(5)(A), (d)(1)(A), (d)(1)(C), (d)(4)(A), and (f)(4).

facility regulation rather than articulating a right granted to the protected class. Ultimately this is insufficient to create and confer federal rights under *Gonzaga*'s strict standard.

By contrast, the Seventh Circuit has held that other portions of the Medicaid Act *do* create and confer federal rights enforceable under section 1983. These cases are instructive because they identify examples of statutory language sufficiently clear to confer federal rights. In *Bontrager v. Indiana Family & Social Services Administration*, the plaintiff alleged that by instituting a $1,000 annual coverage cap on dental services, Indiana violated 42 U.S.C. § 1396a(a)(10), namely, the requirement that "[a] State plan for medical assistance must . . . provide . . . for making medical assistance available . . . to all [eligible] individuals." 697 F.3d 604, 606 (7th Cir. 2012) (quoting 42 U.S.C. § 1396a(a)(10)). The Seventh Circuit held that section 1396a(a)(10) conferred a federal right enforceable under section 1983. In so holding, the *Bontrager* court concluded that Congress intended the provision at issue to benefit the plaintiff, that the statute created a mandatory reimbursement obligation, and that the plaintiff's interests were neither vague nor amorphous. *Id.* at 607. *Bontrager* is easily distinguishable from this case. The statutory language at issue in *Bontrager* more directly conferred a federal right on Medicaid beneficiaries and focused on the *recipient* of the right—eligible individuals—rather than the regulated entities.

The Seventh Circuit considered a second aspect of the Medicaid Act in *Planned Parenthood*. In that case, the court of appeals held that section 1396a(a)(23) confers a federal right because it "uses individually focused terminology" and is "unmistakably phrased in terms of the persons benefited." 699 F.3d at 974 (citations and internal quotation marks omitted). Unlike the provisions of the FNHRA at issue in this case, the *Planned Parenthood* statute focuses on eligible individuals' right to "obtain . . . assistance from any institution, agency, community pharmacy, or person[.]" Unlike the FNHRA, section 1396a(a)(23) focuses on the protected person and eligible individuals' freedom to select a provider.

8

Because the portions of the FNHRA at issue in this case focus on facility regulations and do not unambiguously demonstrate that Congress intended the FNHRA to confer rights on Mr. Bendel, consideration of the first *Blessing* factor, as modified by *Gonzaga*, suggests that the FHNRA does not confer federal rights.

Turning to the second *Blessing* factor, the court considers whether Mr. Bendel's alleged "rights" are so vague and amorphous that enforcement would strain judicial competence. The court concludes that they are. Fiers's Amended Complaint does not identify any specific statutory entitlements within the FNHRA. Rather, Fiers concedes that the Amended Complaint only generally asserts that defendants "had inadequate policies and plans of care to properly supervise and provide care for its residents[.]" Dkt. 29, at 4. Fiers attempts to enforce Mr. Bendel's vague rights to maintenance or enhancement of his quality of life and to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

In her opposition memorandum, Fiers points to what she contends are several "specifically enumerated" rights within the FNHRA: a resident's right to reasonable accommodations, right to freely choose care and treatment options, right to be free from physical or mental abuse and involuntary seclusion or restraint, and right to privacy and confidentiality. Dkt. 29, at 7. However, these "rights" are irrelevant to the court's analysis because Fiers does not plead violations of these particular portions of the FNHRA. The court's analysis does not concern this section of the FNHRA. Fiers pulls this list of "specifically enumerated" rights from subsection (c)(1)(A) of the FNHRA; Fiers's Amended Complaint does not refer to this section. Dkt. 12, ¶ 73 (identifying violations of 42 U.S.C. §§ 1396r(b)(1)(A), (b)(1)(B), (b)(2)(A), (b)(3)(A)-(E), (b)(4)(A), (b)(5)(A), (d)(1)(A), (d)(1)(C), (d)(4)(A), and (f)(4)). Fiers does not allege that defendants violated any of subsection (c)(1)(A)'s "specifically enumerated" rights. Rather, Fiers alleges violations of Bendel's right to a certain quality of life

9

and dignity (section (b)(1)(A)) and right to the highest practicable physical, mental, and psychosocial well-being (sections (b)(2), (b)(4)(A), (d)(1)(A), (d)(1)(C)). Other alleged violations refer to facility requirements that are not phrased as residents' rights, including staffing, training, and administrative requirements (sections (b)(5)(A), (d)(1)(A), (d)(1)(C), and (f)(4)). Even if subsection (c)(1) *did* contain sufficiently clear rights-creating language, Fiers does not allege violations of these particular sections.

Again, the court compares the Seventh Circuit's holdings in *Bontrager* and *Planned Parenthood*, *supra*, to this case. In both of those cases, the Seventh Circuit identified that the statutory provisions at issue unambiguously required the state make assistance available to all eligible individuals or unambiguously conferred the right to freely choose one's provider. The statutes did not refer to generalized, vague, amorphous quality-of-life interests. The rights were clear, unambiguous, and easily subject to judicial enforcement.

Notably, the Seventh Circuit has held that a statutory provision more analogous to the FNHRA's general "quality of life" protections was insufficiently clear to confer a federal right. In *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003), the Seventh Circuit held that the portion of the Medicaid Act requiring state plans for medical assistance to provide care and services in the "best interests" of the recipients is "insufficiently definite to be justiciable, and in addition cannot be interpreted to create a private right of action, given the Supreme Court's hostility . . . to implying such rights in spending statutes." *Bruggeman*, 324 F.3d at 911 (citing *Gonzaga* generally). Not only do the provisions of the FNHRA at issue in this case fail to unambiguously demonstrate that Congress intended to confer federal rights, but the "rights" the

court is able to identify in the cited statutory language are vague, amorphous, and evade effective enforcement.[4]

Because Fiers attempts to enforce vague, amorphous, quality-of-life interests, the second *Blessing* factor also weighs in favor of defendants. The court concludes that Congress did not intend the FHNRA to confer federal rights.

The court's conclusion is supported by two well-reasoned district court decisions in this circuit. In *Schwerdtfeger v. Alden Long Grove Rehabilitation and Health Care Center, Inc.*, the Northern District of Illinois held that the FNHRA does not contain sufficiently explicit rights-creating language. No. 13-cv-8316, 2014 WL 1884471 (N.D. Ill. May 12, 2014). After detailing applicable standards under *Blessing* and *Gonzaga*, the court specifically recognized that Spending Clause legislation rarely confers federal rights and that the FNHRA does not create federal rights because the statute articulates obligations nursing facilities must honor. *Id.* at *3-4. The court acknowledged that the FNHRA benefits residents, but the court determined that "Congress's decision to structure receipt of these benefits as derivative of obligations imposed on nursing facilities indicates that Congress did not intend to create actionable rights for nursing facility *residents*." *Id.* at *4 (emphasis added). The court compared the FNHRA to FERPA, the statute at issue in *Gonzaga*, noting that the FNHRA imposes funding and monitoring obligations on federal and state governments and on the nursing facilities themselves, indicating that the statute's "focus [is] twice removed from the individuals who will ultimately benefit from the [statute]." *Id.* The court concluded that the FNHRA does not articulate absolute federal rights

---

[4] Fiers also pleads violations of corresponding regulations; however, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory test created, but it may not create a right that Congress has not." *Alexander*, 532 U.S. at 291.

11

"but qualified rights in that the rights exist only because a nursing facility participates in a federally funded Medicaid plan." *Id.* at *5.

The Southern District of Indiana has also held that the FNHRA does not create federal rights enforceable under section 1983. In *Terry v. Health and Hospital Corporation of Marion County*, the plaintiff alleged that the defendants (affiliated with a nursing facility acting under color of law) failed to create an environment that allowed the plaintiff to attain or maintain the "highest practicable physical, mental, and psychological well-being." Order on Defendants' Motion for Summary Judgment at 14, No. 10-cv-607 (S.D. Ind. Mar. 29, 2012), ECF No. 80. The *Terry* court determined that in both *Blessing* and *Gonzaga*, the Supreme Court easily distinguished the statutory provisions at issue from those that unmistakably focus on the benefited class, such as Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. *Id.* at 15-16.

Fiers relies on a Third Circuit case which held that the FNHRA *does* confer federal rights. In *Grammer v. John J. Kane Regional Centers-Glen Hazel*, the Third Circuit held that the FNHRA is "sufficiently right-creating and that the rights conferred by its various provisions are neither 'vague and amorphous' nor impose upon states a mere precatory obligation." 570 F.3d 520, 522 (3d Cir. 2009). The court declines to follow this non-binding precedent. The Third Circuit characterized *Gonzaga* as the Supreme Court's attempt to articulate "fine distinctions" in *Blessing*'s application. *Id.* at 526. The Seventh Circuit, however, has explicitly recognized that *Gonzaga* established a "rigorous" analysis, requires an "unmistakable focus" on the benefitted class, and set a much higher bar for federal rights creation than *Blessing* had previously articulated. *See Planned Parenthood*, 699 F.3d at 973. Judge Stafford's dissent in *Grammer* is more akin to the Seventh Circuit's approach to *Gonzaga*. Emphasizing *Gonzaga*'s high rights-creating bar, Judge Stafford could not agree that Congress clearly intended the FNHRA to confer new

federal rights. *Grammer*, 570 F.3d at 532-33. Because the holding in *Grammer* does not reflect the Seventh Circuit's understanding of *Blessing-Gonzaga*, this court declines to follow *Grammer*.

The court concludes that the FNHRA does not confer federal rights and, accordingly, cannot support a cause of action under section 1983. The court will grant defendants' motion to dismiss Count I of Fiers's Amended Complaint.

**B.    The court declines to exercise supplemental jurisdiction over Counts II-IV.**

The court declines to exercise supplemental jurisdiction over Fiers's remaining state-law claims (Counts II-IV). Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." District courts exercise their discretion when determining whether to exercise supplemental jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]"). The court is unaware of any statute of limitations concerns that would suggest that the court should retain jurisdiction over Fiers's state law claims. In fact, Fiers has already filed a separate state court action alleging claims identical to Counts II-IV. Dkt. 23-1. The court will dismiss Counts II-IV without prejudice.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, Dkt. 21, is granted, and the court dismisses Counts I-IV;

2. Defendants' motion to strike materials outside the pleadings, Dkt. 32, is denied as moot; and

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 17th day of September, 2015.

                                                          BY THE COURT:

                                                          /s/

                                                          _____
                                                          JAMES D. PETERSON
                                                          District Judge

Case: 3:15-cv-00088-jdp Document #: 38 Filed: 09/18/15 Page 14 of 14